UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LEONARD W. HOUSTON,

                                  Plaintiff,                                    **REPORT AND
                                                                                RECOMMENDATION**

                    -against-
                                                                                09 Civ. 4544 (SCR) (GAY)

MANHEIM-NEW YORK *d/b/a* MANHEIM
SERVICES CORPORATION *f/k/a* MANHEIM'S
NEWBURGH AUTO AUCTION, *a wholly owned
subsidiary corporation of COX Enterprises, Inc.*,
and COX ENTERPRISES, INC., a Delaware
Corporation, *and a parent corporation for its
subsidiaries*,

                                  Defendants.
------------------------------------------------------------------X


TO THE HONORABLE STEPHEN C. ROBINSON, United States District Judge:


        Plaintiff Leonard W. Houston, proceeding *pro se*, brings this action against

corporate defendants Manheim-New York, Manheim Services Corporation *f/k/a*

Manheim's Newburgh Auto Auction, and Cox Enterprises, Inc. ("Corporate

Defendants"[1]).  Plaintiff asserts employment discrimination claims pursuant to Title VII

---

        [1] The Corporate Defendants contend that plaintiff improperly names the
captioned corporate entities.  They assert that the proper legal names are "Manheim
Services Corporation d/b/a Manheim New York and d/b/a Newburgh Auto Auction."  The
Corporate Defendants state that Manheim Services Corporation, since the inception of
the case, has merged into Manheim Remarketing, Inc. d/b/a Manheim New York.
Nevertheless, the Corporate Defendants submit their motion for summary judgment on
behalf of all of these entities.  Accordingly, this Report and Recommendation applies to
all of the entities named in the caption and this note.  The Court further notes that
defendants refer to "Manheim-New York" without the hyphen.  However, the Court
mirrors the caption to maintain consistency.

of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, and the

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34.  Presently

before this Court are (1) the Corporate Defendants' motion for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure; and (2) plaintiff's motion for

class certification.  For the reasons that follow, I respectfully recommend that the

Corporate Defendants' motion for summary judgment should be GRANTED in full and

plaintiff's motion for class certification be DENIED in full.

## I.  BACKGROUND

The following facts are gathered from the parties' statements pursuant to Local

Civil Rule 56.1 of the United States District Courts for the Southern and Eastern

Districts of New York, from the pleadings and from affidavits, affirmations and exhibits

submitted by the parties in support of their contentions.  Any disputes of material fact

are noted.[2]

Plaintiff is a black, African-American man, who at the time of his First Amended

Discrimination Complaint [hereinafter "First Amended Complaint"] was "over 67 years of

age."  From August 24, 2005 through November 6, 2008, plaintiff was an at-will part-

---

[2] To the extent that plaintiff "disputes" a fact, but fails to "offer contradictory evidence," see, e.g., Pl.'s Resp. Stmnt. & Counter. of Mat. Facts in Dispute Which There is Genuine Issue in Opp. to Defs.' Stmnt. of Mat. Facts Not in Dispute Pursuant to Local Civil Rule 56.1 ¶ 7 [hereinafter "Pl.'s Counter of Mat. Facts"], the Court deems defendants' statement of fact to be uncontroverted.  See F.T.C. v. Med. Billers Network, Inc., 543 F. Supp. 2d 283, 301-03 (S.D.N.Y. 2008) (citing Fed. R. Civ. P. 56(e)) (pro se litigant's conclusory statements are insufficient to dispute moving party's statement of facts); Alleva v. New York City Dep't of Investigation, No. 04 Civ. 4965, 2010 WL 935363, at *3-4 (E.D.N.Y. Mar. 12, 2010) (court deems moving party's statement of facts admitted for the purpose of moving party's motion for summary judgment where non-moving party failed to cite evidence in opposition to said facts).

time employee of Manheim-New York.[3]   Manheim-New York's Employee Handbook

contains an Equal Employment Opportunity policy.  Said policy provides for equal

employment opportunities, without discrimination, to all qualified persons during all

stages of employment.  The policy directs employees who feel they are subject to

discrimination to utilize the company's Employee Problem Resolution Policy/Open Door

Policy or the Anti-Harassment Policy.  The policy also prohibits retaliation against an

employee who makes a complaint about workplace discrimination.

Around February 25 to 27, 2008, plaintiff applied to an Arbitration Manager

position in response to a job opening announcement at Manheim-New York.  In April

2008, Scott Florio, an assistant general manager at Manheim-New York, interviewed

plaintiff for said position.  However, Manheim-New York hired another candidate,

Dennis Fernando for the Arbitration Manager position.  Manheim-New York had no

previous relationship with Fernando or his company, FirstWorld Sales Co.  Nor did

Manheim-New York enter into any "quid pro quo" or other non-employment financial

arrangement with Fernando in exchange for hiring him.

On or about June 5, 2008, the company notified plaintiff of its hiring choice.

Shortly thereafter, plaintiff scheduled and attended a meeting with Florio.  At said

meeting, plaintiff stated to Florio that he felt he was more qualified for the Arbitration

Manager position than Fernando.  Plaintiff contends that Florio could not give him a

direct reason why he was not more qualified.  Rather, Florio stated that plaintiff was "not

quite proper for the position."  Florio did not communicate to plaintiff that his race or

---

[3] Plaintiff contends that parent company Cox Enterprises, Inc. was also his
employer.

color effected Manheim-New York's hiring decision.  However, plaintiff "closed [his] ears" to anything else Florio said.  Although Florio "tried to explain [the hiring choice], . . . [plaintiff] wasn't going to listen . . . ."  Plaintiff believed that since no black person had held the arbitration manager position at Manheim-New York, "it had to be a racial issue."

Thereafter, plaintiff submitted a written complaint to Manheim-New York's human resources department.  He then met with human resources manager, Teri Powles, and Florio on or about June 10, 2008.  At said meeting, Florio stated that plaintiff did not receive the arbitration manager position because he was less qualified for the position.  Florio explained that Fernando's experience was highly relevant, whereas plaintiff's was less appropriate, for the position's duties.

Effective November 6, 2008, Manheim-New York terminated plaintiff, allegedly as part of a reduction-in-force.  At the time of plaintiff's termination, Manheim-New York submitted to him an "Agreement and Release," in part describing their reduction-in-force plan.[4]  Plaintiff, as a part-time customer service representative, and the three other employees holding the same position, were terminated due to lack of business need.  In connection with Manheim-New York's reduction-in-force, it terminated a total of nineteen employees.  Said employees ranged in age from twenty-five to eighty-three years old.  The employees retained by Manheim-New York ranged in age from twenty-six to eighty-four years old.

On or about July 14, 2008, plaintiff filed a complaint with the United States Equal Employment Opportunity Commission (EEOC).  Therein, plaintiff alleged that he did not

_____

[4] Plaintiff declined to sign said agreement.

receive the arbitration manager position because of his race or color.  Subsequent to his

termination, he attempted to amend his complaint to include an allegation of "Retaliation

Discrimination."  The EEOC received plaintiff's amendment on November 12, 2008.

Defendants contend they were not made aware of said amendment.  Moreover,

defendants first learned of plaintiff's age discrimination claim after the conclusion of

plaintiff's EEOC proceeding.  Plaintiff filed the present lawsuit on May 13, 2009.  He

filed his First Amended Complaint on October 1, 2009.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to  judgment as a matter of law."  FRCP

56(c).  When deciding a summary judgment motion, the Court must resolve all

ambiguities and draw all factual inferences in favor of the nonmoving party.  See

McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999).  The question is whether, in

light of the evidence, a rational jury could find in favor of the nonmoving party.  See

Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

Where a plaintiff fails to establish an essential element of its claim, "there can be no

genuine issue as to any material fact, since a complete failure of proof concerning an

essential element of the nonmoving party's case necessarily renders all other facts

immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (internal quotations

and citations omitted).  Summary judgment must be denied, therefore, if the court finds

"there are any genuine factual issues that properly can be resolved only by a finder of

fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

Caution should be exercised in addressing summary judgment motions in discrimination cases where intent and state of mind are at issue because "careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination." See Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000) (citations omitted). Nonetheless, the Second Circuit has expressly "remind[ed the] district courts that the impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable." See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quotation and citation omitted). On the one hand, mere conclusory allegations of discrimination will not defeat a summary judgment motion; a plaintiff in a discrimination case must proffer "concrete particulars" to substantiate his claim. See Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). On the other hand, courts must be aware of the fact that "discrimination will seldom manifest itself overtly." Bickerstaff v. Vassar Coll., 196 F.3d 435, 448 (2d Cir. 1999). Courts must therefore "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." Id. Thus, the ultimate question in deciding a summary judgment motion in a discrimination case "is whether the evidence can reasonably and logically give rise to an inference of discrimination under all of the circumstances." Id.

Further, pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Pro se complaints and supporting papers must be read "liberally" and interpreted to "raise the

strongest arguments that they suggest."  See Soto v. Walker, 44 F.3d 169, 173 (2d Cir.

1995) (quotation and citation omitted).  However, pro se plaintiffs are not exempt from

the "rules of procedural and substantive law."  Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir.

1983).  See also Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting

Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991)) (a "pro se party's 'bald assertion,'

completely unsupported by evidence, is not sufficient to overcome a motion for

summary judgment").

## III.  DISCUSSION

Plaintiff's First Amended Complaint contains four claims[5] against defendants: (1)

discrimination pursuant to Title VII, based on race and color, for denying him a

promotion to arbitration manager; (2) "discrimination quid pro quo" for hiring Fernando in

an alleged "exchange agreement"; (3) discrimination pursuant to the ADEA for

---

[5] In addition to the claims described infra, plaintiff also mentions Title VII's statute precluding retaliation—42 U.S.C. § 2000e-3(a)—in connection with his ADEA claim. The use of the statute in said context is indiscernible.  The Court notes that plaintiff submitted a letter to the EEOC, intending to add a Title VII retaliation claim to his EEOC complaint subsequent to his termination.  Pl.'s Resp. Statement & Counterstatement of Mat. Facts in Dispute . . . , Ex. D [hereinafter "Pl.'s Facts"].  However, plaintiff did not submit documentation demonstrating that an administrative agency actually investigated his retaliation charge.  See First Amended Complaint Ex. C.  Moreover, plaintiff did not enumerate a retaliation claim in his First Amended Complaint.  See First Amended Complaint at 10-30 (Counts I-IV).  Nevertheless, at the time of said filing, plaintiff had the facts at hand to include said claim, but failed to do so.  See First Amended Complaint (filed October 1, 2009); Pl.'s Facts at ¶ 18 (employment terminated in November 2008); Discrimination Complaint ¶ 33 (Count VI of plaintiff's original complaint, superceded by the First Amended Complaint, contained a retaliation claim). Thus, the Court declines to construe said claim in his First Amended Complaint.

terminating him; and (4) class action discrimination pursuant to Title VII, based on race and color[6].

A.  Title VII

Title VII forbids an employer from discriminating against "any individual" based on that individual's "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  Title VII's prohibitions apply whether the individual is an employee or an applicant for employment.  Id. § 2000e-2(a)(1).  "Title VII 'proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation.'"  Gulino v. N.Y. State Educ. Dep't, 460 F.3d 361, 382 (2d Cir. 2006) (citing Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971)).  In the absence of direct evidence of discrimination, courts analyze claims brought under Title VII pursuant to the three-step burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).  See Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000).  Under the McDonnell-Douglas framework, plaintiff must demonstrate that: (1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) he was performing his duties satisfactorily; and (4) the circumstances surrounding the employment action give rise to an inference of discrimination.  See Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005).

If the plaintiff establishes a prima facie case, a presumption that the employer unlawfully discriminated against the employee is raised and the burden of production then shifts to the employer "to articulate some legitimate nondiscriminatory reason" for

---

[6] Plaintiff also filed a separate motion to certify the class action on October 7, 2009, Docket #40.  This Report and Recommendation address both.

8

its actions.  See Fisher v. Vassar College, 114 F.3d 1332, 1335-36 (2d Cir. 1997) (en

banc).  "The employer's explanation must be clear and specific, so that the employee

has an opportunity to demonstrate pretext."  Hill v. Taconic Dev. Disabilities Serv.

Office, 181 F. Supp. 2d 303, 317 (S.D.N.Y. 2002).

    "Should the defendant carry this burden, the plaintiff must then demonstrate that

the legitimate reasons offered by the defendant were not its true reasons, but were a

pretext for discrimination."  Id.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08

(1993).  In determining whether the plaintiff has met this burden, the court must take a

"case-by-case" approach that weighs "'the strength of the plaintiff's prima facie case, the

probative value of the proof that the employer's explanation is false, and any other

evidence that supports [or undermines] the employer's case.'"  James v. New York

Racing Ass'n, 233 F.3d 149, 156 (2d Cir. 2000) (quoting Reeves v. Sanderson

Plumbing Prods., 530 U.S. 133, 148-49 (2000)).  In other words, although the burden of

production shifts, "the ultimate burden rests with the plaintiff to offer evidence sufficient

to support a reasonable inference that prohibited [age, gender, race or national origin]

discrimination occurred."  Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005)

(quotation and citation omitted).

    Here, plaintiff alleges that Manheim-New York discriminated against him based

his race and color for failing to promote him to an arbitration manager.  To support his

discrimination claim, plaintiff submits that (1) Florio stated that plaintiff was "not quite

proper for the position" and (2) no black men have filled the arbitration manager

position.  However, plaintiff admits that Florio "tried to explain [the hiring choice], . . .

[but he] wasn't going to listen."  In addition, plaintiff offers no evidence to support his

conclusion that no black men have filled the position.  In sum, plaintiff only offers bald allegations that Manheim-New York's failure to promote him occurred under circumstances giving rise to an inference of discrimination.

Plaintiff also contends that Manheim-New York hired a less-qualified white man, Fernando, for said position.  However, plaintiff offers a "merely subjective assessment" that his qualifications for the position exceeded Fernando's qualifications.  Chenette v. Kenneth Cole Prods., Inc., 345 F.App'x 615, 619 (2d Cir. 2009) (quotation and citation omitted).  The arbitration manager job description required skills regarding, among others, customer service, supervising others, and vehicle inspection.  Pl.'s Aff. in Opp. to Defs.' . . . Notice of Mot. for Sum. Judgment & in Opp. to Aff. in Support of Mot. for Sum. Judgment [hereinafter "Pl.'s Aff. in Opp."], Ex. G, Job Description of Manager-Arbitration at 1.  Plaintiff's résumé indicated that he had experience with customer service, but no experience with supervising others or inspecting vehicles.  Pl.'s Aff. in Opp., Ex. B.  Notes taken during plaintiff's interview for the arbitration manager position mirror plaintiff's résumé in terms of qualifications.  Id., Ex. D, Leonard Houston.  In contrast, notes taken during Fernando's interview indicate that he had automotive mechanical experience, managed fifty people in his own business, and had "[g]ood phone skills."  Id., Ex. D, Dennis Fernando.  From the interviews for the arbitration manager position, Florio determined that Fernando was the most qualified candidate.  Aff. of Ralph Scott Florio in Supp. of Defs.' Mot. for Sum. Judgment ¶ 10.  Based on Florio's recommendation, general manager of Manheim-New York, Gary Charlesworth, approved Florio's decision to hire Fernando.  Aff. of Gary Charlesworth in Supp. of Defs.' Mot. for Sum. Judgment ¶ 8.

Thus, plaintiff failed to establish a prima facie case of discrimination.  In any event, defendants offer a legitimate, nondiscriminatory reason for not promoting plaintiff. Plaintiff offers conclusory statements to rebut defendants' proffered reason for their hiring choice.  As such, it is respectfully recommended that plaintiff's Title VII discrimination claim should be dismissed.

B.  "_Quid Pro Quo_"

"_Quid Pro Quo_" discrimination, pursuant to Title VII, is to explicitly discriminate "with respect to terms or conditions of employment."  Burlington Indus., Inc. v. Ellerth, 525 U.S. 742, 752 (1998) (citations omitted).  It typically refers to sexual harassment where "an employer demand[s] sexual favors from an employee in return for a job benefit."  Id.  Said sexual harassment is a type of employment discrimination prohibited by Title VII.  See id. 752-754 (discussing _quid pro quo_ harassment and employer liability under Title VII).

Here, plaintiff alleges _quid pro quo_ discrimination in the context of Manheim-New York hiring Fernando.  Plaintiff alleges that Manheim-New York offered Fernando the arbitration manager position in exchange for automotive electrical accessories and automotive services.  Said allegation does not suggest facts to support _quid pro quo_ sexual harassment pursuant to Title VII.  Moreover, plaintiff does not allege that he was forced to exchange some favor or good in return for an employment benefit in violation of his rights.  Accordingly, it is respectfully recommended that plaintiff's "_Quid pro quo_" claim should be dismissed.

C.  ADEA

The ADEA makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  42 U.S.C. § 623(a)(1).  The ADEA prohibits employers from discriminating against both employees and applicants for employment.  Id. § 623(d).  The prohibitions encompassed in the ADEA are "limited to individuals who are at least 40 years of age."  Id. § 631(a).  In order to properly file an ADEA claim, a plaintiff must first file said claim with the EEOC.  Francis v. Elmsford Sch. Dist., 442 F.3d 123, 126 (2d Cir. 2006) (quoting 29 U.S.C. § 626(d)).  A plaintiff may then file suit "at any time from 60 days after [timely] filing the EEOC charge until 90 days after the plaintiff receives notice from the EEOC that the EEOC proceedings are terminated."  Id. at 127 (alteration in the original) (quotation and citations omitted).

Here plaintiff did not first file his ADEA claim with the EEOC.  See, e.g., First Amended Complaint Ex. C (EEOC Notice of Charge), Docket # 43, Answer & Aff. Defenses of Defs. Manheim New York and Cox Enterprises, Inc. to First Amended Complaint at ¶ 113 [hereinafter "First Amended Answer"] (defendants' defense that plaintiff failed to exhaust his administrative remedies).  As such, the Court does not have jurisdiction to review said claim.  See 29 U.S.C. § 626(d)(1) ("No civil action may be commenced by an individual . . . until 60 days after a charge . . . has been filed with the [EEOC].");  Floyd v. Lord & Taylor, 96 F.App'x 792, 793 (2d Cir. 2004) (filing an ADEA claim with the EEOC is a "prerequisite to bringing suit in federal court).  Moreover, because plaintiff did not allege age discrimination in his EEOC complaint, his

12

ADEA claim is not reviewable as "reasonably related" to his EEOC charge.  Simmons
v. Northside Sav. Bank, 162 F.3d 1148, Table (2d Cir. Sept. 2, 1998).  Thus, it is
respectfully recommended that said claim should be dismissed.

      D.  Class Action Pursuant to Title VII

      Plaintiff makes a "pattern or practice" claim in his First Amended Complaint.
Pattern or practice discrimination claims focus on widespread acts of intentional
discrimination against individuals.  United States v. City of New York, 631 F. Supp. 2d
419, 425 (quoting Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 158 (2d
Cir. 2001)).  Said claim must be made as a class action.  See id. (citing numerous
cases) ("individuals cannot maintain a private, non-class, pattern-or-practice claim").
Plaintiff also moves for class certification pursuant to Rule 23(b) of the Federal Rules of
Civil Procedure.  See Docket #46.

      In order for plaintiff to bring a class action, he must have standing.  Jobie O. v.
Spitzer, No. 03 Civ. 8331, 2007 WL 4302921, at *3 (S.D.N.Y. Dec. 5, 2007) (citations
omitted).[7]  The issue of standing is not waivable by the parties or the court.  Id. (citation
omitted).  If plaintiff does not have standing, i.e., "[i]f there is no justiciable case or
controversy, the court lacks subject matter jurisdiction and has no authority to act."  Id.
(citation omitted).

      A plaintiff has standing, in part, if "plaintiff suffers an injury-in-fact or the threat of
injury.  Id. (citation omitted).  Here, plaintiff failed to allege actionable Title VII or ADEA
claims.  Thus, he has not demonstrated "injury-in fact or the threat of injury."  As such,

---

[7] The Court has attached a copy of this and any other unreported decision herein
for *pro se* plaintiff's access.

plaintiff has no standing to bring a class action.  Thus, it is respectfully recommended that plaintiff's class action claim and motion for class certification should be dismissed.

## IV.  CONCLUSION

For all of the foregoing reasons, I conclude, and respectfully recommend, that (1) the Corporate Defendants' motion for summary judgment should be GRANTED as to all of plaintiffs' claims and (2) plaintiff's motion for class certification be DENIED in full.

## VI.  NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(C), as amended, and Rule 72(b), Fed. R. Civ. P., the parties shall have fourteen (14) days from receipt of this Report  to serve and file written objections to this Report and Recommendation.  If copies of this Report are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of this Report to file and serve written objections.  See Fed. R. Civ. P. 6(d).  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Stephen C. Robinson at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.  See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to the Honorable Stephen C. Robinson and not to the undersigned.

Dated:   July 7, 2010                    Respectfully Submitted:

      White Plains, New York

_____

GEORGE A. YANTHIS, U.S.M.J.

.